IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| Salvador Estrada, ) | |
| ) | C/A No. 0:11-2387-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Founders Federal Credit Union, ) | |
| ) | |
| Defendant. ) | |
| ) | |

On August 12, 2011, Plaintiff Salvador Estrada filed a complaint in the Court of Common Pleas for Lancaster County, South Carolina against his former employer, Defendant Founders Federal Credit Union. Plaintiff alleges that he was subjected to race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). On September 7, 2011, Defendant removed the action to this court, asserting federal question jurisdiction under 28 U.S.C. § 1331. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling.

On April 19, 2012, Defendant filed a motion for summary judgment. Plaintiff filed a response in opposition on June 6, 2012, to which Defendant filed a reply on June 25, 2012. On January 8, 2013, the Magistrate Judge issued a Report and Recommendation in which she recommended that Defendant's motion for summary judgment be granted. Plaintiff filed objections to the Report and Recommendation on January 25, 2013. Defendant responded to Plaintiff's objections on February 11, 2013.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the Report and Recommendation or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The facts are thoroughly recited in the Report and Recommendation. Briefly, Defendant is a federally chartered credit union that is headquartered in Lancaster, South Carolina, and has twenty-four offices and three service centers in North Carolina and South Carolina. Plaintiff, who is Hispanic, was hired by Defendant in 2002 to help introduce and market Defendant's products to the Hispanic community. Sworn Declaration of Plaintiff, ¶¶ 8-9 (ECF No. 26-1). Plaintiff's is bilingual and bi-cultural and his skills were useful both in attracting the Hispanic market and aiding Defendant in making information available in Spanish in its automated systems and websites. Id. ¶ 10-11. In 2004, Defendant determined to open a bilingual branch and Plaintiff was promoted to loan officer at the new branch. Id. ¶¶ 14-15. In April 2005, Plaintiff received a four percent salary increase as part of a six month review. Plaintiff was recommended for a promotion to assistant vice president. According to Plaintiff, Stephen Michael Bragg, Chief Operating Officer of Defendant, denied the promotion because it was "too soon." Id. ¶¶ 18-19. Plaintiff was promoted to assistant vice president in January 2007, which position included a five percent salary increase. Id. ¶ 21. Plaintiff continued to receive raises in 2008 and 2009. During the period between 2005 and 2009, Plaintiff traveled to a number of engagements out of state, including Iowa, Georgia, Wisconsin, Texas, and Alaska, at which he spoke about marketing financial products to the Hispanic community. Id. ¶¶ 24-

2

26.

In February 2009, Plaintiff was provided the opportunity to transfer to a branch office in Charlotte, North Carolina. In Charlotte he was under the direct supervision of Daryl Bowie. Bowie's supervisor was John Stone. Both Bowie and Stone were under the supervision of Bragg. Bragg and Stone were good friends. Id. ¶¶ 29. Plaintiff contends that when he commenced working in Charlotte, he came under scrutiny and was counseled regarding his handling of a number of loans he previously had approved. Id. ¶ 30. In particular, Plaintiff was criticized for making loans for investments outside of Defendant's market area. See id. ¶¶ 30-38. Plaintiff also was questioned regarding his use of a corporate credit card. Id. ¶¶ 39-41.

On June 17, 2010, an employee of Defendant was contacted by a customer, Gabriel Gonzalez-Vargas. Vargas and Plaintiff had entered into a business venture in 2008. Vargas stated that he had taken out two loans from Defendant for Plaintiff, but that Plaintiff was refusing to repay him. Affidavit of Sharon V. Teague, ¶¶ 3-4, ECF No. 22-11. Vargas produced statements showing (a) a transfer of $4,000 from Vargas's account to Plaintiff's account on January 13, 2009, and (2) loan proceeds $3,500 deposited into Vargas's account on October 14, 2009 and then a withdrawal of $3,500 in cash. Id. ¶ 5. Vargas asserted that he had given Plaintiff the $3,500 cash in person. Id. ¶¶ 7, 10.[1] Vargas also produced a letter written on April 29, 2010 from his attorney to Plaintiff, alleging that two loans had been obtained by Vargas for the benefit of a business owned by Plaintiff and his wife. Id. ¶¶ 7-8 and Ex. 3. The information was provided to Bragg. Id. ¶¶ 6, 11.

---

[1] Vargas first stated that he had given the cash to Plaintiff at the Lancaster, South Carolina office. However, Plaintiff had already been transferred to Charlotte, North Carolina when the October 2009 transaction allegedly took place. Vargas later stated that he may have provided the money to Plaintiff at their business location. ECF No. 22-11, ¶ 7, 10.

3

On June 18, 2010, Bragg summoned Plaintiff and Bowie to his office. Phyllis Bunkley, Senior Vice President for Human Resources, was present in Bragg's office. Bragg questioned Plaintiff about the loans he had made to Vargas in 2009. Plaintiff explained that Vargas was his former business partner and had threatened Plaintiff and his family. Plaintiff stated that he had gone to the Lancaster Police Department to lodge a complaint against Vargas. Id. ¶ 48. Bragg told Plaintiff that he had violated Defendant's policy regarding approving loans to a person with whom a loan officer has a close professional relationship.[2] Bragg instructed Plaintiff to go home and return to Bragg's office on Monday, June 21, 2010. Id. ¶¶ 47-48.

Plaintiff returned to Bragg's office on Monday and attempted to inform Bragg that Vargas no longer was vested in the business venture as of July 2009, before the loan was approved. Bragg informed Plaintiff that he had determined to terminate Plaintiff. Id. ¶ 51. Plaintiff contends that Bragg was "out to get" him. Id. ¶ 52. According to Plaintiff, Bragg could have issued him a warning or other progressive discipline and should have consulted with Stone and Bowie prior to discharging Plaintiff. Plaintiff also contends that he did not violate Defendant's policy because he no longer had a "close professional relationship" with Vargas at the time of the loan. Id. ¶¶ 54-59. Plaintiff also alleges that white or non-Hispanic employees were treated more favorably for similar conduct, including Tami Settlemeyer, a white female who was demoted for misconduct before she was terminated. Id. ¶ 65. Like Plaintiff, Settlemeyer had been an assistant vice president. She was

---

[2] The applicable provision reads as follows:

> 7. Under no circumstances may a loan officer originate or approve a loan or otherwise be involved in the loan process for any related interests or persons of other close professional relationships. These loan requests should be referred to another loan officer for processing and approval. . . .

4

demoted to loan officer after confronting a customer on the premises of Defendant's branch regarding a personal matter. She subsequently was terminated for approving a loan in excess of her lending authority after being counseled not to do so. Deposition of Stephen Michael Bragg 52-53 (ECF No. 22-8). As with Plaintiff, Bragg was involved in the decision to terminate Settlemeyer. Plaintiff was replaced by a white male who purportedly has less experience than Plaintiff when dealing with the Hispanic community in Charlotte. ¶ 67.

## II. DISCUSSION

A.   Applicable Law

Plaintiff has not alleged direct evidence of discrimination. Therefore, he must prove his case using the burden-shifting scheme first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To succeed on a discriminatory discharge claim, a plaintiff must demonstrate that (1) he is a member of a protected class under Title VII; (2) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) he suffered more severe discipline for his misconduct as compared to those employees outside the protected class. Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011) (citing Taylor v. Va. Union Univ., 193 F.3d 219, 234 (4th Cir.1999), abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)). If the plaintiff makes this showing, a presumption of illegal discrimination arises, and the burden of production shifts to the employer, "'who must articulate a non-discriminatory reason for the difference in disciplinary enforcement.'" Id. (quoting Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993)). If the employer articulates such a reason, "'the burden shifts back to the plaintiff to demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination.'" Id. (quoting Cook, 988 F.2d at 511). Although intermediate

evidentiary burdens shift back and forth under this framework, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

B.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge focused her attention on whether Plaintiff raised a reasonable inference of unlawful discrimination and, relatedly, whether Plaintiff demonstrated that Defendant's proffered reason for discharging Plaintiff – because he violated a policy prohibiting the approval of a loan to a person with whom one has a close professional relationship – was a pretext for discrimination. Regarding any inference of unlawful discrimination, the Magistrate Judge found that a number of Plaintiff's arguments to be grounded on speculation and hearsay testimony. The Magistrate Judge reviewed Plaintiff's arguments regarding Settlemeyer and determined that Settlemeyer was not a valid comparator because she and Plaintiff had different direct supervisors and Settlemeyer did not engage in the same conduct as Plaintiff prior to her termination. Accordingly, the Magistrate Judge concluded that Plaintiff did not make out a prima facie case of discrimination.

The Magistrate Judge further determined that, even if Plaintiff did establish a prima facie case, Plaintiff was unable to establish pretext. The Magistrate Judge noted that the evidence showed Plaintiff made loans Bragg found to be in poor business judgment and that Bragg lacked confidence in Plaintiff's job performance. The Magistrate Judge observed that, although Plaintiff might not have agreed with Bragg regarding whether Plaintiff actually violated Defendant's loan policy, it was Bragg's perception of Plaintiff's job performance, not Plaintiff's perception, that is determinative. Ultimately, the Magistrate Judge found that Plaintiff provided no evidence that Defendant terminated

him based on his race or national origin.

C.        <u>Plaintiff's Objections to the Report and Recommendation</u>

Plaintiff asserts that the Magistrate Judge erred in finding that Plaintiff and Settlemeyer were not similarly situated employees for purposes of establishing a prima facie case. Plaintiff argues that Settlemeyer was counseled after she approved loans outside of her lending authority, a violation of Defendant's loan policy, but that Plaintiff was terminated immediately for lending to a person with whom he allegedly was in a close professional relationship, also a violation of Defendant's loan policy. Plaintiff also notes that, while Settlemeyer and Plaintiff had different direct supervisors, Bragg was involved in the decision-making process as to both individuals.

Bragg testified that "there were multiple things that caused [Settlemeyer's] termination." Bragg Dep. 53, ECF 26-7. However, Bragg also testified that he would have discharged Plaintiff based on the Vargas situation alone. <u>Id.</u> 27. The court will find, for purposes of summary judgment only, that the prohibited conduct in which Plaintiff engaged was comparable in seriousness to Settlemeyer's misconduct, and that Plaintiff received more severe discipline for his misconduct than did Settlemeyer. The question, then, is whether Plaintiff can show that Defendant's legitimate, nondiscriminatory reason for Plaintiff's discharge is a pretext for unlawful discrimination.

In practice, the <u>McDonnell Douglas</u> analytical burden shifting ends at this stage, and the "pretext" inquiry merges with the plaintiff's ultimate burden to prove that he or she was the victim of intentional discrimination or retaliation. <u>Darvishian v. Geren</u>, 404 F. App'x 822, 828 (4th Cir. 2010) (<u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981); <u>Merritt v. Old Dominion Freight Line, Inc.</u>, 601 F.3d 289, 294-95 (4th Cir. 2010)). A plaintiff is entitled to a trial on the merits of a Title VII claim if he establishes a factual record permitting a reasonable finder of fact to

7

conclude that it is more likely than not that the adverse employment action was the product of discrimination. Id. (citing Burdine, 450 U.S. at 254; Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.1995)). The issue "boils down to whether the plaintiff has presented a triable question of intentional discrimination." Id. (citing Merritt, 601 F.3d at 295).

Plaintiff asserts that Defendant's proffered explanation is false because the professional relationship between him and Vargas had ended by the time Plaintiff approved the loan to Vargas. Plaintiff argues that the loan policy does not specifically provide that it applies to former professional relationships. Plaintiff contends that he offered to produce records to demonstrate to Bragg that Vargas was no longer involved in Plaintiff's business enterprise, but Bragg refused to consider such evidence. Plaintiff also asserts that Bragg was aware that Plaintiff and Vargas were involved in a dispute and must have known that their business relationship had concluded. In addition, Plaintiff contends that Bragg was involved in the "unwarranted suspicion and difficulty showed toward Plaintiff" when Plaintiff transferred to Charlotte, North Carolina. All these reasons, according to Plaintiff, demonstrate that Defendant's proffered reason was false and that discrimination was the true reason for Plaintiff's discharge. The court is not persuaded.

Each of Plaintiff's supervisors construed the policy prohibiting the approval of loans to those with whom a loan officer had a close professional relationship to apply regardless of whether the relationship were on-going or ended. Bragg interpreted the loan policy as applying to Plaintiff's situation because there had been a significant professional relationship between Plaintiff and Vargas at one time. Bragg Dep. 28-29. Stone testified that he would tell any employee of his "not to make a loan to somebody that they had or currently were having any type business interest with." Deposition of John McAfee Stone 19, ECF No. 26-8. Bowie averred that "[i]f there is a close

enough relationship that you were close enough to do business together, then I think that could be somewhat perceived as a conflict of interest to do anything with that person in my opinion." Deposition of Daryl Reginald Bowie 28, ECF No. 26-9.  In the court's view, no reasonable jury could find that Defendant's proffered reason for discharging Plaintiff was false.  Further, the court agrees with the Magistrate Judge that Plaintiff has not provided any evidence that Bragg was biased against Plaintiff because of his race or national origin.  Plaintiff's objection is without merit.

### III.  CONCLUSION

The court adopts the Magistrate Judge's recommendation.  For the reasons stated, Defendant's motion for summary judgment is **granted.**

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 21, 2013